## SLOAT *v.* McDOUGAL.

### (*City Court of Brooklyn, General Term.*   April 28, 1890.)

VENDOR AND VENDEE—IMPLIED RESERVATIONS—EASEMENT.

> The vendor of a lot which is part of a tract owned by him can impose no servitude on the lot so sold in favor of the portion retained by him in derogation of his grant, without an express reservation to that effect in the grant.   Following *Burr* v. *Mills*, 21 Wend. 290.

Appeal from trial term.

Action by Ferdinand Sloat against Mary McDougal.   The trial court dismissed the complaint, and plaintiff appeals.

Argued before CLEMENT, C. J., and VAN WYCK, J.

*Albert W. Seaman*, for appellant.   *Strong & Spear*, for respondent.

VAN WYCK, J.   Eastman died seised in fee-simple of a plot of land in Brooklyn 40 feet front on the westerly side of Sumner avenue by 100 feet deep, with a house 40 feet deep standing on the westerly part of this plot and fronting on Sumner avenue.   May 23, 1885, Eastman's executors conveyed to plaintiff, by metes and bounds, a lot 20 by 100 feet, being the southerly half of this 40 by 100 plot.   About 14 inches by 40 feet of the lot so conveyed was covered by the house on the northerly part of the plot, 40 by 100 feet. Thereafter, to-wit, October 7, 1885, Eastman's executors conveyed by metes and bounds a lot 20 by 100 feet, being the northerly half of the 40 by 100 plot, to McGrath, and subsequently conveyed the same to the defendant, Mary McDougal.   Plaintiff brought this action to recover possession of that strip of the lot conveyed to him which is covered by said house, viz., about 14 inches by 40 feet.   Defendant, Mary McDougal, admits that plaintiff has the legal title to this strip of plaintiff's premises, but claims that she has an easement in this part of plaintiff's premises for the support of the wall of her house so long as it shall stand.   The trial court sustained defendant's contention of the existence of such easement in her favor, and dismissed the complaint, though the court substantially found that all the allegations of the complaint were proven.

Assuming that the alleged dominant estate had been conveyed by the common owner, Eastman, before the alleged servient estate, we hardly think it

would have created an easement in this strip for the support of the house. *Griffiths* v. *Morrison*, 106 N. Y. 165, 12 N. E. Rep. 580; *Reiners* v. *Young*, 109 N. Y. 648, 16 N. E. Rep. 368. The servitude must be open and visible to raise a presumption that the parties contracted with it in view. The wall above the ground projected over plaintiff's premises only about 7 inches. A mere inspection of the premises would not disclose this projection. It would require a measurement or survey of the premises to determine this fact. *Butterworth* v. *Crawford*, 46 N. Y. 353, and cases above cited. The wall under the ground projected 7 inches further upon plaintiff's premises than the wall above the ground. This extra projection under the ground could only be ascertained by removing the earth concealing it. It seems to us that this alleged servitude was not open and visible. It is not necessary for us to rest our decision upon the foregoing grounds, because the alleged servient estate was conveyed by the common owner, Eastman, before the alleged dominant estate. It seems to be the fairly settled rule in this state that the vendor of a lot carved out of a larger plot owned by him can impose no servitude upon the lot so sold in favor of the portion retained by him in derogation of his grant, without an express reservation to that effect in the grant. This question was squarely presented to the court, and so decided, in *Burr* v. *Mills*, 21 Wend. 290. COWEN, J., says, (page 292:) "If a man convey land which is covered by his mill-pond without any reservation, he loses his right to flow it. There is no room for implied reservation. A man makes a lane across one farm to another, which he is accustomed to use as a way. He then conveys the former without reserving a right of way. It is clearly gone. A man cannot, after he has absolutely conveyed away his land, still retain the use of it for any purpose without an express reservation. The flowing or the way are but modes of use, and a grantor might as well claim to plow and crop the land." "If the mill had first been sold * * * to another, it would have been different; for the right of flow would have passed to that other as an incident, and could not then be cut off by the grantor." This latter proposition was decided in *Oakley* v. *Stanley*, 5 Wend. 523. We can think of no good reason why a grantor should be allowed to continue, under the idea of an implied reservation, the occupation of a part of the land absolutely conveyed with a part of his house, standing mostly on an adjoining lot retained by him, if he would not be permitted to continue the occupation of land conveyed by him with a mill-pond to run a mill on the adjoining land retained by him. In our opinion, *Burr* v. *Mills* is decisive of the case at bar, unless it has been overruled by subsequent decisions. A careful examination fails to disclose such authorities; but, on the contrary, we find it cited with approval in *Simmons* v. *Sines*, 4 Abb. Dec. 248, by GROVER, J.; *Schrymser* v. *Phelps*, 62 How. Pr. 1; and in *Outerbridge* v. *Phelps*, 13 Abb. N. C. 124. The intimation of SELDEN, J., in *Lampman* v. *Milks*, 21 N. Y. 507, that the rule in respect to easements is the same when the servient estate is first conveyed as when the dominant estate is first conveyed, is mere *obiter dictum;* for in that case the dominant estate was first conveyed, and then there was no reference to *Burr* v. *Mills*, which indicates that the court had no intention of overruling the principle laid down in that case. In *Butterworth* v. *Crawford*, 46 N. Y. 349, the plaintiff sought to assert an easement where the alleged servient estate had been first conveyed; but the court disposed of the case on the ground that the asserted servitude was not apparent, and could not, for that reason, be upheld. Page 351. RAPALLO, J., says: For that reason the court refrains from the expression of an opinion upon the effect of the conveyance by a common owner of the servient, prior to the dominant, estate. Our courts have manifested no inclination to disturb this rule of *Burr* v. *Mills*, which, we think, is sound in principle. We apprehend that the establishment of the converse of this rule at this late date would lead to much confusion and uncertainty in respect to titles, many of

which, doubtless, have been accepted upon the faith of that case, and the well-founded belief that no such implied reservation existed in favor of the grantor. Judgment must be reversed, and new trial granted, with costs to abide the event.