FRANK L. ASHTON *et al.*, *Respondents*, v. B. NORMAN
BUELL *et al.*, *Appellants.*[1]

*James Kiefer*, for appellants.

*Farrell, Meier & Meagher* and *Lowden Sammis*, for
respondents.

FRENCH, J.—In 1913, one Ida L. Haas, a widow, was
the owner of lots 1 and 2, block 1, Eastlake Addition
to the city of Seattle.  This property fronts on East
Lynn street, and the block is a narrow one, extending
from Eleventh avenue north to Twelfth avenue north.
Three houses were built on this property by Mrs.
Haas, and in September, 1920, respondents purchased
that part of the tract described as the east 40 feet of
the west 80 feet of Lots 1 and 2, placing their deed of
record on the 11th day of April, 1921.  Prior to that
time, and in May, 1919, Mrs. Haas had conveyed to the

[1]Reported in 271 Pac. 591.

defendants Buell the east 39.1 feet of lots 1 and 2. This deed, however, was not recorded until July 14, 1922.

This action was brought by respondents, to determine the true boundary line between these respective pieces of property. At the time of the erection of the house on appellants' property, a walk was built from Twelfth avenue running west down by the house, turning thence north to a basement entrance in the west side of the house. A survey, establishing the exact location of the division line between the east 39.1 feet of lots 1 and 2 and the east 40 feet of the west 80 feet of lots 1 and 2, revealed that a portion of this sidewalk, the basement steps, and a portion of the foundation wall of appellants' house were actually located west of the division line.

All matters in controversy between the parties have been eliminated by stipulation excepting the use of the walk leading to the basement entrance. As to this walk, the appellants contend that they have an implied easement to use the walk in connection with the basement door so long as the house which they now occupy stands. The lower court found:

"IV. That on or about the 27th day of September, 1920, the said Ida L. Haas, for a valuable consideration, made, executed and delivered to the plaintiffs herein her certain statutory warranty deed to the east 40 feet of the west 80 feet of said lots 1 and 2 of block 1 of Eastlake Addition to the city of Seattle, which said deed was filed for record in the office of the county auditor of King County, Washington, on or about the 11th day of April, 1921.

"V. That at the time of the purchase of said east 40 feet of the west 80 feet of said lots 1 and 2 in block 1, of Eastlake Addition to the city of Seattle, by the plaintiffs on the said 27th day of September, 1920, the said plaintiffs did not have either actual or constructive knowledge that the said Ida L. Haas had

theretofore made, executed and delivered a deed to the east thirty-nine and one-tenth feet of said lots 1 and 2, nor was the encroachment of the said foundation, steps and concrete walk upon the east 40 feet of the west 80 feet of said lots 1 and 2, known to either the plaintiffs or defendants, nor was it open, apparent and visible to either plaintiffs or defendants that the said foundation, steps and concrete walk did in fact encroach thereon; that said encroachment could not be observed from a casual inspection of said property, and it was not until during the year 1927 that it became known to either that such encroachment existed, and said encroachment could be and was only ascertained by an actual survey.

"VI. That neither said entrance through the westerly foundation into the basement of said structure nor said steps and concrete walk is necessary to the reasonable and convenient enjoyment of the premises sold to the defendant Buell, by the said Ida L. Haas, nor are they or either of them reasonably necessary to the convenient enjoyment of said residence or dwelling house."

No exception was taken to finding No. 4 above quoted, and while an exception has been taken to the fifth finding, yet it is not only abundantly supported by the testimony, but there is, practically speaking, no testimony to the contrary. The record clearly shows that respondents had no notice that their vendor had parted with the title to the property now owned by appellants. While it is true the appellants had a deed of the property the deed was not of record. Rem. Comp. Stat., § 10577, provides:

"Whenever any person, married or single, having in his or her name the legal title of record to any real estate, shall sell or dispose of the same to an actual bona fide purchaser, a deed of such real estate from the person holding such legal record title to such actual bona fide purchaser shall be sufficient to convey to and vest in such purchaser the full legal and equitable title to such real estate free and clear of any and

all claims of any and all persons whatsoever not appearing of record in the auditor's office of the county in which such real estate is situated.''

Rem. Comp. Stat., § 10596, provides:

''All deeds, mortgages, and assignments of mortgages, shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against bona fide purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world.''

And Rem. 1927 Sup., § 10596-2, reads:

''A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record.''

It is apparent, from reading the above quoted portions of the statute, that, although the deed from Ida L. Haas to B. Norman Buell was dated May 10, 1919, it not having been recorded at the time respondents purchased their property in September, 1920, nor at the time they filed their deed of record, and Ida L. Haas being at all times the record owner in fee simple of all the property, respondents took the full legal and equitable title to the real estate named in their deed, free and clear of any claim which the appellants may assert. It is true that this court has held that a purchaser of property must, under certain circumstances, take notice of the claims of those occupying the property; but the record is clear in this case that the Buells were not living upon the property. It was

occupied by tenants. There was nothing in the occupancy of those tenants to indicate that the Buells claimed any right to the property included in respondents' deed.

Nor was it apparent to any person, without making an actual survey, that the walk in question encroached upon the property being purchased by respondents. One of the things essential to creating an easement by implication is that

" . . . the use which gives rise to the easement shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent." *Bailey v. Hennessy,* 112 Wash. 45, 191 Pac. 863.

An inspection of the premises would not disclose the fact that this walk projected over upon the property which respondents were buying. It would require an actual survey to determine that fact. Such a servitude is not open, visible and apparent. *Reiners v. Young,* 109 N. Y. 648, 16 N. E. 368; *Sloat v. McDougal,* 9 N. Y. Supp. 631.

We think, also, that it may be seriously questioned whether the door through the foundation wall at this particular point and the walk and steps are necessary for the comfortable use and enjoyment of the premises purchased by appellants. We think the testimony clearly discloses that, at slight expense, a door could be cut through the south basement wall, connecting with this walk, giving to appellants the same use of the property which they now enjoy, and that finding number 6 was fully warranted.

The doctrine of implied easements, in so far as applicable to city property, should be curtailed rather than extended.

"It is so easy, in conveying a defined piece of land, to express either any limitations intended to be re-

served over it, or to be conveyed with it over other land, that the necessity of raising any such grant or reservation by implication is hardly apparent. Courts of equity can afford relief where the grant is not of that understood by both parties to be conveyed, or so understood by one by inducement of the other. Such rights, outside the limits of one's proper title, seriously derogate from the policy of both our registry statutes and our statute against implication of covenants in conveyances. That policy is that a buyer of land may rely on the public records as information of all the conveyances, and upon the words of the instruments for all rights thereunder. For these and other reasons, we are persuaded that the English rule above quoted, if applied to the full extent of its words, would be against public policy, and would produce results contrary to the real understanding of parties more often than the reverse." *Miller v. Hoeschler,* 126 Wis. 263, 105 N. W. 790.

See, also, *Mayer v. Lesh Paper Co.,* 45 Ind. App. 250, 89 N. E. 894, 90 N. E. 651.

We think our recording statutes fully justify the action of the trial court in the decision reached, and, in addition thereto, that the doctrine of implied easements as interpreted by this court in *Bailey v. Hennessy, supra,* together with our observations in *Jemo v. Tourist Hotel Co.,* 55 Wash. 595, 104 Pac. 820, 19 Ann. Cas. 1199, 30 L. R. A. (N. S.) 926, and *Roe v. Walsh,* 76 Wash. 148, 135 Pac. 1031, 136 Pac. 1146, clearly indicate that the judgment of the trial court should be affirmed; and it is so ordered.

FULLERTON, C. J., ASKREN, MAIN, and PARKER, JJ., concur.