[No. 26787.   Department One.   January 3, 1938.]

TACOMA HOTEL INCORPORATED, *Respondent*, v. MORRISON & COMPANY, INC., *et al.*, *Defendants*, J. W. FEAK *et al.*, *Appellants*.[1]

[1]Reported in 74 P. (2d) 1003.

BLAKE, J., dissents.

*Burkey & Burkey,* for appellants.

*James F. O'Brien, Guy E. Kelly, Bogle, Bogle & Gates,* and *George T. Nickell,* for respondent.

SIMPSON, J.—This appeal is from a judgment foreclosing a mortgage upon real property in the city of Tacoma.

In its amended complaint, plaintiff alleges the giving of the note by defendant Morrison & Company, Inc., payable in the sum of ten thousand five hundred dollars three months after date, with interest at the rate of seven per cent per annum from date and twelve per cent per annum after maturity. It asks recovery, however, for only ten thousand dollars. Further, plaintiff alleged that, besides the real estate mortgage given to secure the payment of a loan, defendant Morrison & Company assigned to it a lease held by the Associated Oil Company upon the property mortgaged,

covering a period from May 1, 1935, to May 1, 1939. Then followed allegations of nonpayment and for reasonable attorney's fees.

Defendants J. W. Feak and wife were made parties defendant for the reason that they claimed some right, title, claim, or interest in the property.

Answering this amended complaint, defendants J. W. Feak and wife denied all of the material allegations of the complaint and then set up, by further answer, that defendant Morrison & Company, Inc., was not the owner of the property mortgaged, but that defendants J. W. Feak and wife were the real owners, and that Morrison & Company, Inc., held the property in trust for defendants. They admitted the legal title to the property still remained of record in Morrison & Company, Inc., the deed to defendants J. W. Feak and wife not having been placed on record. They alleged that Morrison & Company had no right, power or authority, under its articles of incorporation, to mortgage the property. They then alleged that plaintiff loaned to Morrison & Company the sum of ten thousand dollars, but secured from defendant Morrison & Company their note and mortgage in the sum of ten thousand five hundred dollars, and that, by reason of the exaction of the sum of five hundred dollars, in addition to the interest provided in the note, the loan was usurious. Plaintiff in its reply denied the allegations of defendants' answering defense.

Subsequent to the giving of the mortgage by Morrison & Company, but prior to the beginning of this action, defendant Morrison & Company became insolvent and Herbert E. Post was appointed receiver. The receiver did not contest the action other than to file an answer.

After a trial on the merits, the court entered judgment foreclosing the mortgage and allowed attorney's

fees and costs to plaintiff. The defendants Feak and wife have appealed, making as assignments of error, first, the denying of appellants' motion to reopen the case for the purpose of showing entries concerning the loan made on the books of plaintiff; second, in refusing to dismiss the action; third, in refusing to impose the statutory penalties for usury upon plaintiff; and fourth, in refusing to grant appellants a new trial.

There is very little dispute concerning what actually happened during the negotiations leading up to the giving of the note and mortgage.

For a considerable time before the mortgage was given, J. W. Feak and wife owned the property in question. For reasons unnecessary to mention here, a deed of the property and assignment of a lease thereon to the Associated Oil Company were made to Morrison & Company, Inc. Morrison & Company then gave to Feak and wife its deed to the property, but that deed was never recorded.

J. F. Hickey was president of plaintiff corporation and C. W. Van Rooy was its secretary. Stanley L. Morrison was president of Morrison & Company, Inc., and Clara Kough was its secretary-treasurer.

The undisputed evidence concerning the transactions leading up to and culminating in the giving of the note and mortgage is shown by the testimony of three persons, J. F. Hickey, C. W. Van Rooy, and Miss Kough. Mr. Hickey's testimony was to the effect that, a short time before the loan was made, Stanley L. Morrison asked him for a loan of ten thousand dollars. At that time, he explained to Mr. Hickey that Morrison & Company would give him a mortgage upon real estate to secure the payment of the loan. Mr. Hickey at first refused, but later consented to make a loan for a short time if the security was ample and told Morrison to see Mr. Van Rooy. Later, he was advised by Van Rooy

that the security was sufficient, and Mr. Hickey then had a girl in his office draw a check payable to Morrison & Company for ten thousand dollars and authorized her to deliver it to Mr. Van Rooy; that there was no agreement for a note or mortgage to be given in the sum of ten thousand five hundred dollars for the loan of ten thousand dollars; that he did not know that the note was made out in the sum of ten thousand five hundred dollars until about a week afterwards and he then told Mr. Van Rooy that he should change it, but it was not changed because Mr. Morrison could not be found.

Mr. Van Rooy's testimony was to the same effect, that he did not see the mortgage or note for some time after the check was delivered, for the reason that the note and mortgage were sent to the title company and did not come back to him until approximately the time he told Mr. Hickey about its amount.

Miss Clara Kough, secretary-treasurer of Morrison & Company, testified to the execution of the note and mortgage and of the delivery of the note to the clerk of the Tacoma Hotel. She further testified that the note and mortgage were typewritten by Stanley L. Morrison himself, and she signed at his request as secretary of Morrison & Company. The note and mortgage were signed by Morrison & Company, and the usual acknowledgment of the officers of the company was taken.

The first and fourth assignments of error may be considered together, as they relate to the same thing. The motion to reopen and the motion for a new trial concerned the production of the books of respondent corporation. During the trial, oral testimony was introduced concerning the entry upon respondent's books of the five hundred dollar item. Counsel for appellants then asked to have the books brought into court. The

court granted the motion and respondent promised to produce them. Whether or not they were produced, does not show in the testimony, but respondent, in its brief, states that the books were produced in court, and this fact is not denied by appellants.

Whether or not they should have been produced, was a question within the discretion of the trial court to decide. In refusing to reopen the case and in the denial of appellants' motion for a new trial, the court did not abuse its discretion.

Appellants urge that Morrison & Company held the property in trust for them and could not encumber it by a valid mortgage. They admit that their deed from Morrison & Company was not on record and do not contend that the officers of the respondent company knew of its existence.

The failure to record the conveyance and the fact that the mortgagee had no notice thereof preclude appellants from interfering with the mortgage transaction.

"A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. *Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded.* An instrument is deemed recorded the minute it is filed for record." Rem. Rev. Stat., § 10596-2 [P. C. § 1914-2]. (Italics ours.)

In *Fales Co. v. Seiple Co.*, 171 Wash. 630, 19 P. (2d) 118, this court said, in referring to the above statute:

"The parties protected by our recording statute are subsequent purchasers or mortgagees in good faith, for a valuable consideration, 'from the same vendor, his

heirs or devisees, of the same real property or any portion thereof, whose conveyance is first duly recorded.' "

Of like import are *Ashton v. Buell,* 149 Wash. 494, 271 Pac. 591; *Kroetch v. Hinnenkamp,* 171 Wash. 518, 18 P. (2d) 491; *Dunn v. Neu,* 179 Wash. 351, 37 P. (2d) 883; 2 Tiffany on Real Property (2d ed.), 2202, § 567 (1); 23 R. C. L. 232, § 96.

The wrong complained of in this case was occasioned by the failure of appellants to record timely. If the recording statute had been complied with seasonably, this wrong would not have resulted. The purpose of the recording statute is to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property unless the mortgagee or purchaser had actual knowledge of the transfer not filed of record.

The next contention that appellants make is that the note and mortgage were usurious, in that provision was made for payment of an amount of interest in excess of that allowed by statute.

Our statute relating to interest provides:

"Any rate of interest not exceeding twelve (12) per centum per annum agreed to in writing by the parties to the contract, shall be legal, and no person shall directly or indirectly take or receive in money, goods, or thing in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or thing in action than twelve (12) per centum per annum." Rem. Rev. Stat., § 7300 [P. C. § 3156].

Rem. Rev. Stat., § 7304 [P. C. § 3161], provides the penalty for the overcharge of interest.

It is apparent that, if the parties to this agreement intended the mortgage to be in the sum of ten thousand five hundred dollars and the amount loaned was only ten thousand dollars, such contract does provide

for an amount of interest or charge for the loan that would amount to usury.

The question is largely one of the intent of the parties at the time of the transaction.

In *Simpson v. Cox Corp.*, 167 Wash. 34, 8 P. (2d) 424, it was held that a contract was not usurious unless, upon reasonable construction of the terms in view of the dealings of the parties, it is manifest that the parties intended to engage in a usury transaction. In that case, we quoted with approval from 39 Cyc. 917, as follows:

"Since usury laws are quasi-penal, the courts will not hold a contract to be in violation of the usury laws unless upon a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that the intent of the parties was to engage in such a transaction as is forbidden by those laws. If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and invalid, the court will always adopt the former. In short the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other hypothesis."

It is apparent from the testimony that Mr. Hickey did not intend to charge more than the interest named in the note, that is, seven per cent to maturity and twelve per cent thereafter.

The question of whether or not usury was present in this case, depends entirely upon whether the trier of the facts believed the testimony of Mr. Hickey and Mr. Van Rooy. The court did believe their testimony and decided that no usury had been charged or exacted. This court will not disturb findings of the trial court on questions of fact unless there is a clear preponderance of the evidence against the findings. *Carlson v. Seattle*, 175 Wash. 388, 27 P. (2d) 717.

Prior to the filing of the amended complaint, plaintiff, in making its original complaint, had asked

for the recovery of the full face value of the note in the sum of ten thousand five hundred dollars and did not give defendants credit for the amounts paid to it by the oil company on its lease. Later, in their amended complaint, they only asked for recovery of ten thousand dollars. The testimony does not disclose why this was done. The only explanation we have is contained in the court's oral statement made at the close of the trial as follows:

"There has been considerable talk about the complaint. Mr. Kelly has explained that; that the note and mortgage were sent to him to foreclose and he drew his complaint accordingly, and supposed Mr. Hickey looked at it, yet nine hundred and ninety-nine out of a thousand clients sign on the dotted line as he is told, and the attorney certifies that he signed it, and furthermore even though he noticed at the time it was $10,-500.00 and authorized suit for that amount, the record showed the amount of the obligation."

It is evident, in view of all of the testimony and the trial judge's statement, that two mistakes were made in the preparation of the first complaint; one in seeking recovery of ten thousand five hundred dollars and the other in not giving credit to the mortgagor for the amounts paid by the oil company on its lease. The fact that errors were present in the drawing of this first complaint cannot change the terms and meaning of the original agreement.

Appellants urge that, having once asked for an amount which would be usurious, they cannot now disclaim their request for the larger amount in order to escape the penalties of usury. In support, they cite the case of *Richardson v. Foster*, 100 Wash. 57, 170 Pac. 321, and *Home Savings & Loan Ass'n v. Sanitary Fish Co.*, 156 Wash. 80, 286 Pac. 76. In both of those cases, it was shown that all of the parties agreed to the contract, and that there was an original agreement to

charge more than the legal rate of interest. The court held that, having made this charge, they could not thereafter be relieved by a disclaimer. That rule cannot benefit appellants in this case, because there was no intention on the part of the officers of respondent corporation to charge more than the legal rate of interest when the loan was made.

█ Finally, appellants insist that the mortgage was invalid because it was not authorized by resolution of the company's board of trustees, and that the company had no authority under its articles of incorporation to mortgage its real estate.

The note and mortgage were executed in the name of defendant corporation by Stanley L. Morrison, its president, and Clara Kough, secretary-treasurer, with the corporate seal attached. The mortgage was acknowledged by the president and secretary-treasurer in the statutory form for corporate acknowledgments, the certificate reciting:

". . . under oath stated that they are authorized to execute said instrument and that the seal affixed is the corporate seal of said corporation."

In the following cases, proof of such signing and acknowledgment was held sufficient to establish *prima facie* the validity of a note and mortgage executed by a corporation. *Milton v. Crawford,* 65 Wash. 145, 118 Pac. 32; *University Plumbing & Heating Co. v. Naches Hotel Co.,* 177 Wash. 548, 32 P. (2d) 545.

Morrison & Company was a domestic corporation organized under the laws of this state, and its articles of incorporation provide, among other things:

". . . to engage in the real estate business; in connection and as a part of the business to buy and sell real estate on its own account."

In *Milton v. Crawford, supra,* this court said:

"Among the express powers conferred upon domestic corporations by statute (Rem. & Bal. Code, § 3683), is the power to purchase, hold, mortgage, sell and convey real estate. In the absence of a plain abdication thereof in the articles of incorporation, this power is inherent in every corporation organized under our general law, just as are the powers to sue and to appoint officers and agents conferred by the same section."

In view of the rules laid down in these cases, we must hold the note and mortgage valid obligations of defendant Morrison & Company.

After a study of the entire record, we conclude the decree of the trial court foreclosing the mortgage was correct.

The judgment is affirmed.

STEINERT, C. J., MAIN, and HOLCOMB, JJ., concur.

BLAKE, J. (dissenting)—Believing the facts stated in the opinion bring the case within the rule of *Home Savings & Loan Ass'n v. Sanitary Fish Co.,* 156 Wash. 80, 286 Pac. 76, I dissent.