

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 OCT 14  AM 9: 15

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| DAVID C. COTTINGHAM and JOAN S. COTTINGHAM, <br><br> Appellants/Cross Respondents, <br><br> v. <br><br> RONALD J. MORGAN and KAYE L. MORGAN, Husband and Wife, <br><br> Respondents/Cross Appellants. | No. 68202-4-I <br><br> (Consolidated with No. 68402-7-I) <br><br> UNPUBLISHED OPINION <br><br> FILED: October 14, 2013 |

SCHINDLER, J. — David and Joan Cottingham (Cottingham) own waterfront property on Lake Whatcom. Ronald and Kaye Morgan (Morgan) own an adjacent waterfront lot. Cottingham filed a lawsuit against Morgan claiming ownership of a portion of Morgan's property by adverse possession. Cottingham also asserted claims for nuisance, outrage, conversion, and trespass. Morgan filed a counterclaim to quiet title to the disputed area. The court granted Cottingham's motion for partial summary judgment, concluding Cottingham established adverse possession of approximately 800 square feet of Morgan's property. But at the conclusion of the trial, the court found that Cottingham established adverse possession as to only 292.3 square feet of Morgan's property. The court quieted title to the property in Cottingham but allowed Morgan to purchase the property at fair market value. The court also ordered Morgan pay treble

damages under the timber trespass statute, and dismissed Cottingham's claims for nuisance and outrage.

On appeal, Cottingham contends the court erred in revising the decision on partial summary judgment, allowing Morgan to purchase the property, and dismissing the nuisance and outrage claims. Morgan cross appeals the order granting partial summary judgment, the determination that he committed conversion, and the award of treble damages. We affirm the trial court in all respects but remand to address an inconsistent conclusion of law in the "Supplemental Findings of Fact and Conclusions of Law."

## FACTS

David and Joan Cottingham (Cottingham) own two waterfront lots on Lake Whatcom, Lot 9 and Lot 10 of the "Nixon Beach" tracts. Lot 9 is directly north of Lot 10. The lots are narrow and rectangular. The western edge of the lots borders Lake Whatcom. Cottingham's house is located on Lot 9. Lot 11 shares a boundary with Lot 10. Lot 11 is also a narrow rectangular tract of land with the western edge bordering Lake Whatcom. A 10-foot-wide private road runs across the eastern edge of the Nixon Beach tracts. The road is held in undivided ownership interests for all of the owners of 14 Nixon Beach lots.[1]

In 2004, Ronald and Kaye Morgan (Morgan) considered purchasing Lot 11. In 2005, Morgan retained Larry Steele to conduct a survey. In January 2006, Morgan purchased Lot 11. A row of laurels was located along the boundary between Lot 10 and Lot 11.

---

[1] The deed to Lot 11 states that title includes an "undivided 14th interest in the road shown on the plat."

In August 2006, Morgan began construction of the house, a fence, and a driveway. Morgan installed the fence along the property line indentified in the Steele survey. In September 2007, Morgan removed eight of the laurels to construct the driveway. In fall 2008, ground water from the septic tank was inadvertently pumped onto the lot south of Lot 11. Morgan installed a new drain field in the spring.

In June 2009, Cottingham filed an action to quiet title to a portion of Lot 11 asserting ownership by adverse possession. Cottingham also alleged claims for trespass, conversion, nuisance, and outrage. Morgan filed a counterclaim to quiet title to the disputed portion of his property.

Cottingham filed a motion for partial summary judgment on adverse possession. Cottingham submitted a declaration stating that beginning in 1989, he mowed and cleared blackberry in the disputed area. Cottingham also stated that between 1989 and 1994, he planted rhododendrons, the laurel hedge, a garden, a locust tree, and a hydrangea on or near the disputed area, and installed a compost structure and a swing set in the disputed area. Cottingham said that he planted another row of laurels on the eastern end of the boundary in 1995.

Cottingham also submitted the declaration of Steven Otten. Otten maintained Lot 11 for the previous owner, Gladys Cook, until she sold the property in 1998. Otten stated that the disputed area "was being regularly mowed and maintained and used by Cottinghams."

In opposition, Morgan argued that when he visited the property in 2004 and 2005, he never saw "any evidence of any occupation of Lot 11 by plaintiffs or anyone else." Morgan submitted the declaration of his surveyor Steele. Steele stated that

3

when he visited the property between January 2005 and January 2007, he did not "see evidence of any established boundary line, or witness or see evidence of any adverse occupation." Steele also stated that there was "an uneven row of bushes some of which were north of Lot 11, some of which were on the surveyed property line, and some of which were on Lot 11."

The court granted the motion for partial summary judgment. The court concluded the unrebutted evidence established that Cottingham adversely possessed approximately 800 square feet of the property located near the boundary line near Lot 10 and Lot 11 beginning in 1989. The order states, in pertinent part: "Defense has raised disputed legal conclusions, but no relevant issues of material fact. The adverse possession lasted well in excess of the statutory requirement."

Several witnesses testified during the four-day trial on the remaining claims, including Cottingham, Morgan, septic installer Thomas Pulver, real estate appraiser Don Gustafson, and surveyors Bruce Ayers and Steele.[2] The court also conducted a site visit.

At the conclusion of the trial, the court revised its ruling on partial summary judgment "because at trial it became clear" that many of the laurels were "clearly on Lot 10 and not Lot 11." The court ruled that Cottingham had established adverse possession as to only 292.3 square feet and not 800 square feet of the disputed area. The court also ruled that Morgan was entitled to purchase the 292.3 square feet from Cottingham and that title "in the disputed property, and all of Lot 11 should be quieted in Morgan upon payment of $8,216.55 to Cottingham." Finding of fact 23 states, in

---

[2] The other witnesses were Whatcom County Environmental Health Specialist Edward Halasz and septic designer Sharon Kettells.

4

pertinent part:

> Although Cottingham acquired a portion of Lot 11 by adverse possession, that portion acquired:
>
> A.     provides little value to the Cottinghams;
>
> B.     is of great value to the Morgans, providing for minimum set back requirements;
>
> C.     any remedy requested by Cottingham would result in substantial permanent improvements being removed on Lot 11 and/or would likely create safety issues related to access to all of the Morgan residence and property; and
>
> D.     any remedy requested by Cottingham would likely result in further disputes and conflict as opposed to ending this matter.
>
> E.     not to allow the Morgans to purchase the property from the Cottinghams would place an unreasonable restriction on the use of the Morgan's property, without giving much benefit to the Cottinghams.
>
> F.     not to allow the purchase would significantly affect marketability and usability of the Morgans' property.
>
> The Court should exercise its equitable powers and require that the Morgans purchase that portion of the disputed area adversely possessed at fair market value.

The court also ruled that Morgan committed the tort of conversion by removing several laurels that were clearly not on his property and ordered him to pay treble damages under the timber trespass statute, RCW 64.12.030. The findings of fact state, in pertinent part:

> 27.     The laurel bushes removed by Morgans were clearly not theirs, regardless of location or condition. Morgan committed the tort of conversion in taking them.
>
> 28.     The fair market value to replace the laurels is $4342.98.
>
> 29.     The Morgans knew of the existence of a bona fide property line dispute but nonetheless intentionally removed the eight laurels in violation of R.C.W. 64.12.030. Therefore, damages should be trebled.

The court rejected Cottingham's nuisance and outrage claims. The court found that "[t]he Morgans have not been involved in a public nuisance as claimed by Cottinghams. Any spill from the old septic system or delay in designing a new system was <u>de minimus</u> and occurred in good faith."

5

The court entered a judgment against Morgan in the amount of $21,245.49:

> 1. For timber trespass waste under RCW 64.12.030, damages for which, at $4,342.98, are trebled for $13,028.94.
> 2. For purchase of the "disputed area" $8216.55.

Cottingham filed a motion to reconsider, vacate the judgment, amend the findings of fact and conclusions of law, or grant a new trial. The court denied Cottingham's motion and entered Supplemental Findings of Fact and Conclusions of Law proposed by Morgan.[3]

## ANALYSIS

Cottingham contends the court erred in revising the decision on partial summary judgment, ordering him to sell the property he owned by adverse possession, and dismissing the nuisance and outrage claims. Morgan cross appeals the finding that Cottingham established adverse possession of a portion of Lot 11, the finding that he committed conversion, and the decision to award Cottingham treble damages under the timber trespass statute.

Adverse Possession

Cottingham claims the court erred in revising the decision on partial summary judgment by finding that he established adverse possession as to only 292.3 square feet of Lot 11. We disagree. Because the order on partial summary judgment was not

---

[3] Supplemental finding of fact 23 states:
The portion of Lot 11 claimed by Cottingham by adverse possession:
    A.      provides little value to the Cottinghams;
    B.      is of great value to the Morgans providing for minimum set back requirements for the residence, septic system and driveway;
    C.      Morgan at no time acted in bad faith nor willfully in violation of any claim [o]f title to Lot 11 of Cottingham;
    D.      any remedy requested by Cottingham would result in substantial permanent improvements being removed on Lot 11 and/or would likely create safety issues related to access to all of the Morgan residence and property; and
    . . . .

6

final, the court had the authority to modify the order at any time prior to entry of the final judgment. CR 54(b); Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 300, 840 P.2d 860 (1992).

Cottingham also argues substantial evidence does not support the finding that the disputed area was only 292.3 square feet and not 800 square feet.[4]

To establish ownership by adverse possession, Cottingham had the burden of establishing that possession of the disputed area was (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile for the 10-year statutory period. RCW 4.16.020(1); Chaplin v. Sanders, 100 Wn.2d 853, 857, 676 P.2d 431 (1984); ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). The party claiming adverse possession has the burden of establishing each element. Miller v. Anderson, 91 Wn. App. 822, 828, 964 P.2d 365 (1998). Whether a person has gained title by adverse possession is a mixed question of law and fact. Miller, 91 Wn. App. at 828. Whether the facts establish adverse possession is a question of law that we review de novo. Bryant v. Palmer Coking Coal Co., 86 Wn. App. 204, 210, 936 P.2d 1163 (1997).

We review a trial court's findings of fact to determine whether substantial evidence supports the findings of fact and, in turn, whether the findings support the conclusions of law. Scott v. Trans-Sys., Inc., 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003). Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). The court views the evidence and all

---

[4] Cottingham waived his right to challenge findings of fact 4, 5, 7, 8, 10, 14, 15, 18; conclusion of law 9; and amended conclusions of law 7 and 11; and assignments of error regarding the lis pendens, the supersedeas bond, and the motion to strike portions of declarations submitted in support of summary judgment. None of these assignments of error are addressed in the argument section of the brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn. 2d 801, 809, 828 P.2d 549 (1992).

reasonable inferences in the light most favorable to the prevailing party. Korst v. McMahon, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006). We defer to the trial court's determination regarding conflicting evidence and credibility of the witnesses. Weyerhaeuser v. Tacoma-Pierce County Health Dep't, 123 Wn. App. 59, 65, 96 P.3d 460 (2004). "The party challenging a finding of fact bears the burden of showing that it is not supported by the record." Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Unchallenged findings of fact are verities on appeal. Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).

Substantial evidence supports the finding that Cottingham adversely possessed only 292.3 square feet of Lot 11 because "many laurels were planted on a portion of the joint property line and a substantial portion of them were clearly on Lot 10 and not Lot 11." The record also supports the finding that only the laurels "on the east part of the common line were planted . . . on Lot 11, in the disputed area." The Steele survey depicts the placement of the laurels in 2005. Steele testified that the laurel hedge was located on Lot 11 along the eastern edge of the boundary with Lot 10. The survey also shows the laurel hedge continuing west along the boundary toward the lake and then crossing the boundary line onto Lot 10.

Equitable Sale

Cottingham claims the court abused its discretion by allowing Morgan to purchase the 292.3 square feet. Quiet title actions are equitable in nature. Durrah v. Wright, 115 Wn. App. 634, 639, 63 P.3d 184 (2003). A trial court sitting in equity has broad discretion to fashion a remedy "to do substantial justice." Esmieu v. Hsieh, 92

Wn.2d 530, 535, 598 P.2d 1369 (1979); Haueter v. Rancich, 39 Wn. App. 328, 331, 693 P.2d 168 (1984).

We review the authority of a court to fashion an equitable remedy for abuse of discretion. Sac Downtown Ltd. P'ship v. Kahn, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). The trial court's equity power is "flexible and fact-specific." Proctor v. Huntington, 169 Wn.2d 491, 503, 238 P.3d 1117 (2010).

The factors set forth in Proctor support the trial court's decision. In Proctor, the Huntingtons mistakenly built their home, well, and garage on a portion of Proctor's land. Proctor, 169 Wn.2d at 494. Proctor sued the Huntingtons for ejectment. Proctor, 169 Wn.2d at 495. The trial court ordered Proctor to sell the land to the Huntingtons. Proctor, 169 Wn.2d at 495. On appeal, the Washington Supreme Court identified a number of factors the trial court should consider in fashioning the equitable relief, and affirmed. Proctor, 169 Wn.2d at 504. The Court identified the following factors:

> (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

Proctor, 169 Wn.2d at 500[5] (quoting Arnold v. Melani, 75 Wn.2d 143, 152, 437 P.2d 908 (1968)). The Court held that the trial court did not abuse is discretion by refusing "to require the Huntingtons to remove their entire house, garage, and well—at an estimated cost of over $300,000—because of both parties' good-faith surveying mistake." Proctor, 169 Wn.2d at 503.

---

[5] (Internal quotation marks omitted.)

Here, the court expressly found that Morgan "at no time acted in bad faith nor willfully in violation of any claim [of] title to Lot 11 of Cottingham," and the damage to Cottingham was slight and the benefit of removal small. The court found that the portion of Lot 11 that Cottingham acquired by adverse possession was of little value to Cottingham. The court also found that the sale of the disputed area did not limit Cottingham's use of the property, and Cottingham could still build a garage and access Lake Whatcom.

In contrast, the court found that the disputed area was very valuable to Morgan because the land was necessary to meet the "minimum set back requirements for the residence, septic system and driveway." The record shows there was less than 1.5 feet between Morgan's garage and the boundary. Real estate appraiser Don Gustafson testified that a setback of less than five feet affects marketability. The court also found that if Cottingham had title to the disputed area, it "would likely create safety issues related to access to all of the Morgan residence and property." We hold the court did not abuse its discretion by ordering the equitable sale.

Nuisance

Cottingham claims the court erred in dismissing his public nuisance claim. A "public nuisance" is a nuisance "which affects equally the rights of an entire community or neighborhood." RCW 7.48.130. A nuisance action may be brought by "any person whose property is . . . injuriously affected or whose personal enjoyment is lessened by the nuisance." RCW 7.48.020. Nuisance is a substantial and unreasonable interference with the use and enjoyment of land. Grundy v. Thurston County, 155 Wn.2d 1, 6-7, 117 P.3d 1089 (2005).

Cottingham challenges the finding that Morgan "believ[ed] that he was merely pumping odorless ground water" from a hole on his property, that "[a]ny spill from the old septic system or delay in designing a new system was de minimus and occurred in good faith," and that Morgan believed he was pumping "[g]roundwater [and] rainwater" and "couldn't smell anything."

Substantial evidence supports the findings. Septic installer Thomas Pulver testified that when he excavated the old drain field, there was no pooling of effluent or any evidence that anything spilled onto the Cottingham's property. Further, the unchallenged finding states that "[t]here was no substantial evidence that effluent was pumped from the tank or, if it were, that it caused any damage." Unchallenged finding of fact 24 also states that the delay in fixing the septic system was due to wet winter weather: "During the wet winter months it can be problematic with the water table in the area to rebuild a septic field . . . . The delay was in the hands of professionals and not unreasonable under the circumstances."[6]

Outrage

Cottingham also asserts the trial court erred in dismissing his outrage claim. To establish outrage, a plaintiff must show "behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Kloepfel v. Bokor, 149

---

[6] (Emphasis added.) Cottingham also argues Leo Day is not a certified septic installer and there is no evidence Whatcom County required the rocks installed as barriers around the drain field. The record does not support Cottingham's argument. The record shows that Leo Day worked for Ultra Tank Services. Thomas Pulver, the owner of Ultra Tank, is a licensed Whatcom County septic installer. A Whatcom County Health Department on-site sewage construction permit indicates, "Traffic control barriers [are] required along perimeter of driveway adjacent to main and reserve drainfield."

Wn.2d 192, 196, 66 P.3d 630 (2003)[7] (quoting Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)). The unchallenged finding that "[n]o conduct of Morgans could be regarded as atrocious or utterly intolerable in a civilized community" supports dismissal of the outrage claim.

Cross Appeal

Morgan contends the court erred in concluding Cottingham established adverse possession.

When reviewing a grant of summary judgment, we undertake the same inquiry as the trial court. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Under CR 56, the moving party bears the initial burden of showing the absence of genuine material issues of fact and that the moving party is entitled to judgment as a matter of law. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets its initial burden, the nonmoving party must set forth specific facts to rebut showing that a genuine issue as to a material fact exists. Allard v. Bd. of Regents of Univ. of Wash., 25 Wn. App. 243, 247, 606 P.2d 280 (1980).

Here, the unrebutted evidence established Cottingham adversely possessed the disputed area from 1995 to 2005. The court did not err in concluding Cottingham adversely possessed the disputed area and granting the motion for partial summary judgment.

Morgan also challenges the finding that he committed the tort of conversion by removing eight laurel bushes. "Conversion" is " 'the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.' " Brown v. Brown, 157 Wn. App. 803, 817-18, 239 P.3d 602

---

[7] (Emphasis omitted.)

(2010) (quoting <u>Consulting Overseas Mgmt., Ltd. v. Shtikel</u>, 105 Wn. App. 80, 83, 18 P.3d 1144 (2001)).

Because substantial evidence supports the finding that Morgan "knew of the existence of a bona fide property line dispute but nonetheless intentionally removed the eight laurels in violation of R.C.W. 64.12.030," the trial court did not err in awarding treble damages.

In October 2007, Morgan wrote Cottingham a letter with a subject line, "Morgan/Cottingham Lot Line," informing Cottingham that he had removed several laurels.

> [W]e have removed the marked portions of the hedge needed to provide adequate access to our house.  Under any possible compromise the marked laurels could not stay.
> I am still willing to discuss a transfer of some property at the back of our lot in return for some property at the front of your lot if you need this to develop your separate lot.  At a minimum, however, we would need a permanent easement for ingress and egress over the back part of the property to get reasonable access to our home.

The unchallenged findings of fact also state that "[w]hen the Morgans purchased their property they were aware of the laurels and their location in close proximity to the survey line."  There is also no dispute that Cottingham planted the laurels as a hedge between Lots 10 and 11.[8]

Morgan claims the trial court erred by trebling the damages for the cost of the laurels because the timber trespass statute did not apply.  We disagree.  The timber trespass statute states, in pertinent part:

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, . . . timber, or shrub <u>on the land of another</u> person, . . . without

---

[8] The cases Morgan relies on, <u>Lane v. W.J. Curry & Sons</u>, 92 S.W.3d 355, 364 (Tenn. 2002), and <u>Gostina v. Ryland</u>, 116 Wash. 228, 234-35, 199 P. 298 (1921), are inapposite because they address nuisance, not conversion.

lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

RCW 64.12.030.[9] If a trespasser has knowledge of a bona fide boundary dispute, treble damages are appropriate. RCW 64.12.030; Maier v. Giske, 154 Wn. App. 6, 21, 223 P.3d 1265 (2010).

Supplemental Findings of Fact and Conclusions of Law

We affirm the trial court in all respects but remand to address what appears to be an inadvertent error in the Supplemental Findings of Fact and Conclusions of Law. In the Supplemental Findings of Fact and Conclusions of Law, the court clearly crossed out the proposed finding that "Cottinghams have not established that they adversely possessed any portion of Lot 11."[10] However, the court did not cross out the corresponding conclusion of law that states, "The Cottinghams have not established all elements of adverse possession by clear, cogent and convincing evidence as to any portion of Lot 11."[11] Accordingly, we remand to address the discrepancy.

---

[9] (Emphasis added.)

[10] (Emphasis added.)

[11] (Emphasis added.) This amended conclusion of law is also contrary to the finding that Cottingham established adverse possession to 292.3 square feet of Lot 11, the order allowing Morgan to pay Cottingham $8,216.55 to purchase a portion of Lot 11, and entry of the judgment. On appeal, Morgan admits there is "some confusion in the record" about the court's ruling on adverse possession.

We affirm in all respects but remand to address the inconsistent conclusion of law in the Supplemental Findings of Fact and Conclusions of Law.[12]

WE CONCUR:

---

[12] Cottingham is not entitled to attorney fees on appeal based on the statutes he cites.